UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

L.J.B., individually and on behalf of I.J.B., a
child with a disability,

                                    Plaintiff,

         -against-

NORTH ROCKLAND CENTRAL SCHOOL
DISTRICT,

                                    Defendant.

**OPINION AND ORDER**

22-CV-08474 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

         L.J.B. ("Plaintiff" or the "Parent") brings this action, individually and on behalf of I.J.B.,

a minor child with a disability, against North Rockland Central School District ("Defendant" or

the "District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§

1400-1482 and Article 89 of the New York State Education Law, N.Y. Educ. L. § 4402. (Doc. 1,

"Compl."). Plaintiff seeks judicial review of a decision by a State Review Officer ("SRO") at the

New York State Education Department which found that the decision of the Impartial Hearing

Officer ("IHO") that I.J.B.'s Individualized Education Program ("IEP") for 2020-21 and 2021-22

was reasonably calculated to confer a free appropriate public education ("FAPE"). Plaintiff seeks

reversal of that decision and reimbursement for transportation costs for February 2021 and the

costs of placing I.J.B. in private school.

         Both parties seek summary judgment.[1] (Doc. 24; Doc. 25, "Pl. Br."; Doc. 26, "Def. Br.";

Doc. 27, "Reply"; Doc. 16-1, "56.1 Stmt."). Plaintiff moves for summary judgment pursuant to 20

---

[1] Although only Plaintiff filed a Notice of Motion for Summary Judgment (Doc. 24), both parties stated
their intention to move for summary judgment during the July 17, 2023 pre-motion conference. (*See* Jul.
17, 2023 Minute Entry). The Court accordingly notified the parties, pursuant to Federal Rule of Civil
Procedure 56(f), that it would search the record and grant summary judgment to the party entitled to that
relief. (*Id.*).

U.S.C. § 1415(i)(2)(C)(iii), which authorizes the Court to "grant such relief as the court determines is appropriate" for claims brought under the IDEA. (Doc. 24).

For the following reasons, Plaintiff's motion for summary judgment is DENIED and summary judgment is GRANTED to Defendant.

## **BACKGROUND**

The Court has reviewed the administrative record provided by the parties. (Doc. 11).[2] The following facts are drawn from the parties' Local Rule 56.1 Statement, (Doc. 16-1, "56.1 Stmt."), transcripts of the testimony heard by the IHO, exhibits introduced at the IHO hearing, and the decisions of the IHO and SRO. The Court adopts the SRO's thorough recitations of the factual background of the case except to the extent challenged by either party. The Court will address any such challenges herein as noted and otherwise will repeat the facts only to the extent necessary to adjudicate the cross motions for summary judgment.

I.   Factual Background

I.J.B. is a student with multiple disabilities and has a medical diagnosis of spastic diplegia, a form of cerebral palsy resulting in simultaneous increased muscle tone and muscle weakness. (A-0053). I.J.B. is capable of verbal utterances but assessing his overall cognitive functioning is complicated by severe impairments in his expressive language and articulation. (A-0056-59). Due to his condition, I.J.B. has trouble properly moving muscles in his mouth to produce sounds (A-0146). He has delays in all testing areas administered in the independent speech-language evaluation, including word classes, following directions, formulating and recalling sentences, understanding spoken paragraphs, and word definitions. (A-0106). I.J.B.'s evaluators concluded

---

[2] The administrative record in this case is Bates-numbered in the style "A-####" and citations to the administrative record will reference the corresponding Bates numbers.

in 2020 that his communicative abilities would improve if an appropriate assistive technology device is effectively incorporated into his curriculum with comprehensive training. (*Id.*).

I.J.B. was enrolled as a student in the East Ramapo Central School District and placed at Kaplan by its Committee on Special Education ("CSE") prior to the 2016-17 school year (A-0054). Testing during the 2014-15 school year revealed fairly significant delays in cognitive functioning, adaptive behavioral skills, motor and visual functioning. (A-0145). In February 2017, Plaintiff and I.J.B. moved from East Ramapo Central School District into the District. The residency change did not affect I.J.B.'s placement at Kaplan, and the District's CSE kept I.J.B. at Kaplan through the 2020-21 school year (*Id.*).

Kaplan is a therapeutic program that serves students, ages 5 to 21, with cognitive impairments, developmental disabilities, and medical fragility. (A-0054-55). Kaplan houses several special programs, including the social communications program. (*Id.*). The social communications program provided I.J.B. with a class size of "8:1+2" (i.e., eight students, one special education teacher, and two aides) and a program that places an emphasis on self- regulation so as to create opportunities to socialize with peer groups, while promoting independence. (*Id.*).

I.J.B. was evaluated by the District in 2018 (A-0649-0674). Psychological testing revealed delays in nonverbal, verbal, and full-scale cognitive functioning, all falling below the 0.1 percentile when compared with similarly aged peers. (A-0651-0652). I.J.B.'s full-scale IQ score of 43 is in the moderately delayed range – the lowest range one can score on the assessment. (A-0651). Due to his low cognitive functioning, I.J.B. had difficulty retaining academic skills previously acquired. (A-135). I.J.B. also received an assistive technology ("AT") evaluation in 2018, resulting in his own augmentative and alternative communication ("AAC") device in the classroom, an iPad with specialized communication software, in addition to access to the classroom iPads. (*Id.*).

In the spring of 2020, I.J.B. was administered an independent neuropsychological evaluation and independent evaluations in occupational therapy ("OT"), physical therapy ("PT"), AT and speech/language. (A-0748-0827). While the independent evaluators disagreed with the CSE's recommendations on programming, the SRO noted that the results of the independent evaluations were similar to the District's testing in 2018. (A-0010-0012).

In March of 2020, schools went remote due to the COVID-19 pandemic and all related services, including physical therapy, had to be provided remotely. (A-747). Following the end of in-person instruction in New York on March 13, 2020, Kaplan set up remote instruction on March 23, 2020, only ten days after in-person instruction ceased. (A-0832). Plaintiff did not provide consent for remote instruction until the end of April (A-0828-0830), and I.J.B. did not begin participating in remote instruction at Kaplan until May 8, 2020 (A-0936, 957-958).

The CSE's convened to simultaneously review the aforementioned IEE's and to hold I.J.B.'s annual review for 2020-21. (A-0845). The CSE, based on its review, approved an IEP that built upon the previous IEP found appropriate by the SRO and Hon. Cathy Seibel. *L.J.B. v. N. Rockland Cent. Sch. Dist.* 660 F. Supp. 3d 235, 267 (S.D.N.Y. 2023). The CSE noted that many of the recommendations in the IEE's were already in I.J.B.'s program. (A-0082). However, the CSE increased parent counseling and training to three times per week to address implementation of the AAC device per IEE recommendations, despite being more intensive than what the CSE would normally recommend. (A-0091-92, 110). The CSE allowed I.J.B. to bring home the AAC device, which Plaintiff previously complained about in the first Due Process Complaint. (*Compare* A-0735 *with* A-0861).

During the summer of 2020, I.J.B. received speech services where he worked on functional communication, and used his AAC device without prompting. (A-0298, 634, 812, 861-862). By

the end of the summer, I.J.B. was using his AAC device to make responses more than five words in length and his output of only two-word utterances in September was attributed to the transition to a new classroom with a new teacher, therapists and students during the pandemic. (A-0873-875).

After the start of the 2020-2021 school year, I.J.B. remained in his Kaplan class from September 2020 through February 2021, and attended classes in-person to the extent possible. (A-535, 540, 542). The Board of Cooperative Educational Services ("BOCES") employed a hybrid schedule in response to the pandemic, dividing Kaplan's programs into two cohorts, A and B, with cohort A attending in-person on Monday and Tuesday, and cohort B attending in-person on Thursday and Friday. (A-0173-174, 296, 537, 836, 986). Under this schedule, Wednesday was a remote day for the whole school. (*Id.*). In-person instruction would switch to remote instruction on days there was a COVID exposure or positive test among members of the school community. (A-0579). I.J.B.'s teacher at the hearing testified that she observed regression in I.J.B.'s abilities as a learner at the start of the school year that was comparable to most students at Kaplan returning to in-person instruction. (A-0632, 634). Nonetheless, I.J.B. continued to work on basic reading and writing skills. (A-0400, 639).

I.J.B. continued to use his dedicated AAC device while attending Kaplan during the 2020-2021 year. (A-0694). Kaplan's staff who worked with I.J.B. also received AT training. (A-318). Kaplan's staff did not report concerns over I.J.B.'s use of his device or any instances of device abandonment. (A-0326, 373). I.J.B. used his AAC device to communicate without prompting, and was very fluent with it, including its touchscreen features. (A-0782). I.J.B. would also raise his hands to answer questions from the teacher, and transition to the classroom iPad or his AAC device to answer the question. (A-0637). I.J.B. used the classroom iPad to work on in-

class materials which were all digital and was able to go back and forth between his AAC device and classroom iPad without issue. (A-0643-644).

At Kaplan, I.J.B. received OT services in the classroom and was fully engaged in tasks. (A-0379-380, 382, 388-389, 392). However, on days Kaplan moved to remote instruction during the school year due to periodic COVID outbreaks in school, Plaintiff did not make I.J.B. available for remote OT services, despite prior notification. (A-1096-1105). The District tried to convene a CSE meeting in November 2020 to address concerns regarding I.J.B.'s need for a calculator, but were ultimately rebuffed by Plaintiff. (A-1110). As 2020-21 was I.J.B.'s re-evaluation year, the District sent consent for re-evaluation on January 20, 2021, but only received the signed consent back in June. (A-1292, 1294). I.J.B. remained enrolled in Kaplan through February 26, 2021, when Plaintiff unilaterally enrolled him at Shrub Oak in March 2021. (A-1159).

The CSE convened I.J.B.'s annual review meeting for the 2021-22 school year on June 15, 2021. (A-1245-1248). Staff from both Kaplan and Shrub Oak were in attendance. (A-2311). At the meeting, Kaplan staff expressed that it felt Kaplan was still appropriate, and Plaintiff expressed no concerns or disagreements with a placement at Kaplan. (A-1290, 1326-1327). Teachers from Kaplan also reported I.J.B. was making progress towards the goals in his IEP at the time he was unilaterally placed at Shrub Oak. (A-1286, 1340, 1347-1348). Shrub Oak staff offered that I.J.B. required frequent prompts, that his attention was fleeting, and that he had shown some aggression in class. Based on all available information, the CSE approved an IEP that recommended continued placement at Kaplan for 2021-22, with individual and small group speech/language therapy, OT, parent counseling and training, and extended school year services. (A-1246).

I.J.B. was evaluated by the District in the summer of 2021, revealing that his cognitive and academic profile remained unchanged. I.J.B. was administered an OT evaluation by the District

occupational therapist on June 18, 2021, who reported that I.J.B. had no difficulties walking to the testing location. (A-1272-1275). I.J.B. was administered a PT evaluation by District on July 23, 2021 in a school setting, revealing that he did not require any PT functional goals. (A-1397-1398, 1443). I.J.B. was administered a speech/language evaluation by the District on July 16 and 23, 2021. (A-1561). The District speech pathologist noted that I.J.B.'s scores should be interpreted with caution as he was permitted to use his AAC device and the assessments were not normed for students with devices. (A-1565-1566). I.J.B. was administered a psychoeducational evaluation on July 23 and 30, 2021, where the District psychologist noted that I.J.B. was able to ambulate and sit down independently. (A-1461, 1477-1478). At the time he was evaluated, I.J.B. had been enrolled at Shrub Oak for five months. Testing revealed no gain in academic skills and cognitive functioning was at the lowest range of the normed population. (A-1503). Finally, I.J.B. was administered an educational evaluation on August 7 and September 23, 2021. (A-1327-1338).

I.J.B. continued his enrollment at Shrub Oak into the 2021-22 school year. (A-1727-1728, 1732). At Shrub Oak, I.J.B. did not receive any functional behavioral assessment ("FBA") or behavior intervention plan ("BIP"), nor was he provided an AAC device that he could bring home. (A-1234, 1798). I.J.B. appears to have received speech therapy, though no witness from Shrub Oak testified about speech for the 2021-22 school year. The record contains no testimony about the nature of I.J.B.'s classroom instruction as no Shrub Oak teacher testified for Plaintiff. Plaintiff's witnesses were unable to say what the age range of the students in I.J.B.'s class was. (A-1746-1747). In November 2021, the District's CSE convened to review the above-mentioned re-evaluations with Shrub Oak staff in attendance. (*Id.*). The last hearing date was December 9, 2021, and no evidence regarding the remainder of the 2021-22 school year was introduced into the record. (*Id.*).

7

II.   <u>Administrative Proceedings</u>

Plaintiff filed the underlying due process complaint on or about February 10, 2021. (A-0013). After 11 days of hearing, the IHO issued a decision in favor of the District on April 17, 2022. (A-0008-42). Plaintiff appealed the IHO decision to the SRO, who in turn denied the appeal on July 8, 2022, finding in favor of the District with regard to its programs at issue. (A-0044-92). Like the IHO, the SRO did not reach the issue of the appropriateness of Shrub Oak or the equities of the parties. (A-00008-42). Plaintiff initiated this action appealing the decision of the SRO. (*Id.*). The SRO found that Plaintiff abandoned several claims brought at the IHO level, that Plaintiff failed to raise any claims with regard to I.J.B.'s sensory needs and that Plaintiff may not raise the issue for the first time on appeal. The SRO also determined that notwithstanding the regression that I.J.B. experienced in the fall of 2020 due to the pandemic, I.J.B. made progress or achieved several of his IEP annual goals before leaving Kaplan for Shrub Oak in March 2021. (*Id.*).

**STANDARD OF REVIEW**

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence." *Id.* In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* Where an IHO and SRO reach conflicting conclusions, the court "must defer to the SRO's decision

8

on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012). "On issues of law, however, such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *C.S.*, 990 F.3d at 165. "When parents seek to overturn an SRO's decision, they bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *Phillips v. Banks*, No. 23-362, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024).

Deference to the administrative decision is particularly appropriate when the administrative officer's review has been thorough and careful, and where the court's decision is based solely on the administrative record. *See M.H.*, 685 F.3d at 241. While this Court "do[es] not simply rubber stamp administrative decisions," *Walczak*, 142 F.3d at 129, review of the administrative decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). The Court must determine first whether the SRO reached "reasoned conclusions" before affording deference. *See M.H.*, 685 F.3d at 246. "But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role . . . the purpose of the IDEA is to provide funding to states so that they can provide a decent education for disabled students consistent with their traditional role in educating their residents." *Id.* at 244.

At the administrative level, the burden of proof and persuasion falls on the school district to demonstrate that the student was not denied a FAPE. N.Y. Educ. Law § 4404(1)(c). "On appeal to a federal court, however, the burden of demonstrating that an SRO ruled incorrectly falls on the party challenging that decision." *B.D. v. Eldred Cent. Sch. Dist.*, 661 F. Supp. 3d 299, 311

(S.D.N.Y. 2023) (citing *M.H.*, 685 F.3d at 225 n.3). "When parents seek to overturn an SRO's decision, they bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *Phillips*, 2024 WL 1208954, at *2 (citing *M.H.*, 685 F.3d at 225 n.3).

"Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling." *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020). "They can obtain retroactive reimbursement from the school district after the IEP dispute is resolved, if they satisfy a three-part test that has come to be known as the *Burlington-Carter* test." *Id.* (citing *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985); *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)). "A parent can obtain such reimbursement if: (1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Id.* "If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end." *M.C. ex rel. Mrs. C v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000).

## ANALYSIS

### I.   Claims Deemed Abandoned by the SRO

The IHO made specific findings regarding the lack of an FBA or BIP, I.J.B.'s access to a communication device, the sufficiency of the annual goals, the lack of physical therapy, and Defendant's provision of transportation. (A-0082-92). The SRO concluded that Plaintiff did not assert in its appeal to the SRO "that the IHO erred in these determinations or otherwise allege that the IHO failed to address any alleged violations by the district"; and as such, the SRO deemed that

Plaintiff "abandoned these FAPE challenges and the IHO's findings regarding the lack of FBA and BIP, the student's access to assistive technology, the sufficiency of the annual goals, the lack of [physical therapy], and transportation have become final and binding on the parties and will not be reviewed on appeal. (A-0026-27). Plaintiff argues that these issues were raised "inherently on appeal by raising the IHO's error in failing to consider the circumstances of the pandemic, in that she excused the District for all of the above as a result of the pandemic." (Pl. Br. at 17). Defendant argues that nothing in Plaintiff's appeal to the SRO alleged or revealed these issues and that "Plaintiff made a procedural calculation to prioritize specific issues, and thus abandoned their claims to the" issues ultimately deemed abandoned by the SRO. (Def. Br. at 17 (citing *M.Z. v. New York City Dep't of Educ.*, No. 12-CV-04111, 2013 WL 1314992, at *10 (S.D.N.Y. Mar. 21, 2013))).

"Generally speaking, a party is obligated to appeal to the SRO any portion of the IHO decision that 'aggrieved' the party, and failure to do so constitutes abandonment of the claim." *Phillips v. Banks*, 656 F. Supp. 3d 469, 483 (S.D.N.Y. 2023) *aff'd* No. 23-362, 2024 WL 1208954 (2d Cir. Mar. 21, 2024). "The Court overturns an SRO's determination on abandonment only if the determination is arbitrary and capricious, such that it displays a clear error of judgment." *W.R. on behalf of N.R. v. Katonah Lewisboro Union Free Sch. Dist.*, No. 21-CV-00883, 2022 WL 17539699, at *9 (S.D.N.Y. Dec. 7, 2022). The SRO properly deemed abandoned Plaintiff's arguments regarding the lack of an FBA or BIP, I.J.B.'s access to a communication device, the sufficiency of the annual goals, the lack of physical therapy, and Defendant's provision of transportation. "Plaintiff, on appeal to the SRO, '[was] obligated to clearly specify their reasons for challenging the IHO's decision; to identify the precise rulings presented for review; and to cite to the pertinent portions of the record on appeal. Issues not so identified in the cross-appeal are

properly deemed abandoned by the SRO.'" *AR on behalf of MR v. Katonah Lewisboro Union Free Sch. Dist.*, No. 18-CV-09938, 2019 WL 6251196, at *12, n.8 (S.D.N.Y. Nov. 21, 2019) (quoting *M.C., on behalf of J.C. v. Mamaroneck Union Free Sch. Dist.*, No. 17-CV-01554, 2018 WL 4997516, at *23 (S.D.N.Y. Sept. 28, 2018)). "Any adverse findings made by the IHO that were not appealed to the SRO have not been exhausted and cannot be considered." *W.R.*, 2022 WL 17539699, at *8. The arguments that were deemed abandoned were not clearly specified in Plaintiff's appeal to the SRO, and it is plainly insufficient for Plaintiff to now claim that these arguments were somehow "inherently" raised by challenging entirely distinct issues. Plaintiff identified, in its Request of Review of the IHO decision to the SRO, the following five issues:

1. The IHO erred in failing to consider the circumstances of the pandemic in determining whether the District provided I.J.B. a FAPE. The Student's circumstances should not have been considered absent the pandemic, given the significant effect of the pandemic on the Student, which resulted in regression, as acknowledged by the District. Based on prevailing case law, the District should have taken action to modify I.J.B.'s program when it determined that 1.J.B. was not making progress during the pandemic, rather than continuing the exact same program.

2. The IHO erred in finding that the District attempted to evaluate timely but did not receive consent. The IHO in effect excused the District's failure to notice regression as a result of this inaccurate finding. The IHO does not rely on documentary or testimonial evidence to support this finding. Moreover, had the District timely evaluated upon I.J.B.'s return from remote learning, when they should have been aware that regression could have occurred, they might have been able to develop an appropriate IEP.

3. The IHO erred in failing to address the Parent's claims regarding I.J.B.'s sensory needs due to inaccurately determining that such a claim was not asserted by the Parent. The Parent explicitly raised a claim in her due process complaint regarding the District's failure to provide an appropriate program and failure to provide appropriate occupational therapy to I.J.B. It was revealed during the hearing that I.J.B. had significant sensory needs that were unidentified by the District, and the District had the opportunity to present evidence regarding this claim. This

12

should not have been ignored by the IHO.

4. The IHO incorrectly concluded that by the time of development of the June 2020 and June 2021 [IEPs], the student had made progress and met benchmarks in each of his goals and had achieved all his reading, speech/language, social/emotional /behavior, and fine motor goals.

5. Due to the erroneous finding that the District provided the Student with a FAPE, the IHO failed to make a finding regarding the appropriateness of the unilateral placement. The Parent's witnesses and document evidence from Shrub Oak International School support a finding that the unilateral placement was appropriate and met I.J.B.'s academic, social, communication, fine- and gross-motor needs.

(A-0104-105). Nowhere in its Notice of Request for Review of its Request for Review did Plaintiff specifically identify that it was appealing the IHO's determinations regarding the lack of an FBA or BIP, I.J.B.'s access to a communication device, the sufficiency of the annual goals, the lack of physical therapy, and Defendant's provision of transportation to be abandoned. The SRO did not err in deeming Plaintiff's arguments regarding the lack of an FBA or BIP, I.J.B.'s access to a communication device, the sufficiency of the annual goals, the lack of physical therapy, and Defendant's provision of transportation to be abandoned.

Accordingly, the SRO's determination that Plaintiff has failed to exhaust her remedies with respect to these findings is thorough and careful and will not be overturned by this Court.

II. The 2020-21 and 2021-22 IEPs

"The IEP is 'the centerpiece of the [IDEA's] education delivery system for disabled children.'" *Mr. P*, 885 F.3d at 741 (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017)). The IEP must be developed annually by "[a] school official qualified in special education, the child's teacher, the child's parents, and, where appropriate, the child." *Walczak*, 142 F.3d at 122. "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements."

*N.B. v. N.Y.C. Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017). In the Second Circuit, review of the adequacy of an IEP proceeds in two steps: (1) whether "the District has complied with the IDEA's procedural requirements" and (2) whether, substantively, the IEP is "'reasonably calculated to enable the child to make progress appropriate in light of the child's circumstances.'" *Mr. P*, 885 F.3d at 748 (quoting *Endrew F.*, 137 S. Ct. at 1001).

"As to this latter requirement, the IEP need not bring the child to grade-level achievement, but it must aspire to provide more than de minimis educational progress." *N.B.*, 711 F. App'x at 32. "What the statute guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving parents." *Walczak*, 142 F.3d at 132. "In addition to providing an education that is likely to produce progress and tailored to the unique needs of the child, the program must be offered in the least restrictive environment." *Avaras ex rel. A.A. v. Clarkstown Cent. Sch. Dist.*, No. 18-CV-06964, 2019 WL 4600870, at *2 (S.D.N.Y. Sept. 21, 2019) (citing 20 U.S.C. § 1412(a)(5)(A)). "[A] disabled student's least restrictive environment refers to the least restrictive educational setting consistent with that student's needs, not the least restrictive setting that the school district chooses to make available." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 163 (2d Cir. 2014). "This requirement expresses a strong preference for children with disabilities to be educated, to the maximum extent appropriate, together with their non-disabled peers." *Id.* at 161.

There are two IEPs at issue in these proceedings. The June 2020 IEP (A-0845), which was in effect for the 2020-21 school year, and the June 2021 IEP (A-1245), which was in effect for the 2021-22 school year. Plaintiff asks the Court "to make an individual determination as to whether each IEP was reasonably calculated to enable I.J.B. to make meaningful progress." (Pl. Br. at 2).

Plaintiff does not assert procedural violations of the IDEA but rather challenges the substantive adequacy with respect to the two IEPs.

      A.  The 2020-21 IEP

      Plaintiff takes issue, with respect to the 2020-21 IEP, with: (i) Defendant's removal of I.J.B.'s physical therapy service; (ii) Defendant's recommendation to provide the same amount of speech language services as the prior year and the same assistive technology device as the prior year; (iii) Defendant's failure to increase I.J.B.'s occupational therapy sessions and refusal to do any additional testing; and (iv) Defendant's failure to adopt any of the recommendations made by an independent neuropsychological evaluator. (Pl. Br. at 7-9). The IHO noted in its decision that the programs provided by Defendant to I.J.B. in 2020-21 and 2021-22 were "virtually the same as in prior years and that the 2017-18, 2018-19, and 2019-20 programs were determined by the SRO to be appropriate." (A-0080). The SRO concluded, with respect to each of these aspects of the 2020-21 IEP, that Defendant made adjustments to the IEP based on I.J.B.'s needs and circumstances and that his progress was commensurate with his circumstances. (A-0030-31). Defendant points out that the 2020-21 IEP was "built upon the previous IEP found appropriate by the SRO." (Def. Br. at 5). Indeed, the SRO's prior decision that the 2019-20 IEP sufficiently conferred a FAPE to I.J.B. was upheld by Judge Seibel when summary judgment was granted in Defendant's favor in *L.J.B. v. N. Rockland Cent. Sch. Dist.* 660 F. Supp. 3d 235, 267 (S.D.N.Y. 2023) ("In short, the evidence supports the SRO's decision that the IEPs adequately addressed I.J.B.'s behavior, and the sufficiency of the District's strategies for dealing with his classroom conduct is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers.").

Progress under a prior IEP supports the appropriateness of future IEPs that offer similar programming. *See H.C. v. Katonah-Lewisboro Union Free Sch. Dist.*, 528 Fed. App'x 64, 66-67 (2d Cir. 2013) ("Relying on its earlier conclusion that M.C. made progress in previous years, the district court also rejected Parents' arguments that M.C.'s special education needs were not met in the 2008–2009 IEP."). "During the 2019-2020 school year, which was interrupted by the pandemic, I.J.B. continued to achieve his IEP speech and language goals and had reached most of his benchmarks/objectives by the time the pandemic hit." *L.J.B.*, 660 F. Supp. 3d 235, 262-63 (S.D.N.Y. 2023). The SRO concluded in its well-reasoned decision that "[r]eview of the March 23, 2021 progress report for [I.J.B.'s] IEP annual goals and short term objectives for the 2020-21 school year reflects that the student made progress, as he achieved several of his short-term objectives and annual goals by the time he left the Kaplan School in late February 2021." (A-0033-34). The SRO further noted that "[a]lthough the student may not have made the progress the parent desired, the evidence in the hearing record does not lead me to the conclusion that he exhibited regression such that he was unable to make progress toward his IEP annual goals and short-term objectives prior to his removal from the Kaplan School in February 2021." (A-0038). Plaintiff argues that the IEPs were insufficient by pointing to various instances in which I.J.B. was unable to meet an annual goal. (Pl. Br. at 11). Such arguments miss the mark however, because the SRO did not consider these instances in a vacuum as Plaintiff does in her briefing, but rather analyzed I.J.B's performance "in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017) ("Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal.").

The Court finds, with respect to the 2020-21 IEP, that the SRO's findings and conclusions are carefully considered and well-reasoned. As a matter "requiring educational expertise," the

Court must defer to the SRO's conclusion that the 2020-21 IEP was adequate and provided I.J.B. with a FAPE. *R.E. v. New York City Dep't of Educ.*, 694 F.3d at 189.

      B.  The 2021-22 IEP

      Plaintiff argues that the 2021-22 IEP was inadequate because "the District was well aware of regression or stagnation in a wide range of areas, as well as I.J.B's continued need for physical therapy and assistance with communication" but nevertheless "recommended the exact same placement and services once again." (Pl. Br. at 14-15). Defendant considered and relied upon, in developing annual goals for 2021-22, various reports and information presented by Shrub Oak staff regarding I.J.B.'s progress in 2021. (A-0031-32). The 2021-22 IEP, like the IEP from the year before, incorporated evidence regarding I.J.B.'s sensory and behavioral progress and needs. (*Id.*). The SRO's findings and conclusions with respect to the 2021-22 IEP are similarly well-reasoned and carefully considered. Accordingly, the Court defers to the SRO's conclusion that the 2021-22 IEP was adequate and provided I.J.B. with a FAPE.

      C.  Impact of the COVID-19 Pandemic

      Plaintiff additionally argues that the IHO decision "inappropriately excused the circumstances of the pandemic." (Pl. Br. at 15). The IHO however did not excuse the circumstances of the pandemic but merely noted that the impact of the pandemic and the effect of remote instruction should be considered. (A-0091). The SRO considered the IHO's remarks regarding the pandemic and remote instruction and concluded:

> [T]he USDOE and NYSED's Office of Special Education have indicated that, under these unique circumstances, a CSE should have the first opportunity to consider the student's needs and whether any additional services may be warranted as a result of the pandemic. There is no indication that this has yet occurred for this student or that the district has refused to engage in this process.

(A-0041). Plaintiff does not point to any instruction or services that I.J.B. was denied because of the COVID-19 pandemic, nor does Plaintiff indicate that Defendant has refused to engage with Plaintiff to provide additional services specifically as a result of the pandemic. The SRO's conclusions are consistent with Judge McMahon's remarks in *J.T. v. de Blasio*, noting that "[i]n the specific context of the COVID-19 pandemic, the USDOE has clearly embraced an approach of granting schools maximum flexibility to keep their students safe so long as they continue to offer all students a free appropriate education." 500 F. Supp. 3d 137, 187 (S.D.N.Y. 2020). The COVID-19 pandemic was a nationwide emergency which required school districts to quickly adapt to remote learning for all students. The SRO carefully considered I.J.B.'s progress during the 2020-21 school year and found that there was progress made in several areas despite the pandemic. The SRO's findings with respect to the COVID-19 pandemic's impact on the IEPs at issue in this litigation are well-reasoned and carefully considered, and as matters of educational expertise the Court defers to the SRO's findings on this topic.

Accordingly, Plaintiff's motion for summary judgment on the first claim for relief is denied, and summary judgment is granted to Defendant.

III.   <u>Plaintiff's Second Claim for Relief Compensatory Education Remedy</u>

The Complaint also presses a second claim for relief alleging that Defendant violated New York Education Law § 4402 by refusing to provide publicly funded transportation to I.J.B. following placement at Shrub Oak in February 2021. (Compl. ¶¶ 254-256). Plaintiff did not address this claim for relief in the summary judgment briefing. The Court therefore deems Plaintiff's second claim for relief to be abandoned. *See Singleton v. City of Newburgh*, 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (deeming a claim abandoned where the claim was alleged in the complaint but not "raised elsewhere in the record"). Even if Plaintiff did not abandon the second claim for relief,

this claim separately fails because Plaintiff has failed to exhaust this claim. Plaintiff did not include the reimbursement of transportation costs for February 2021 in the Request of Review to the SRO and, as the Court concluded above, the SRO correctly concluded that Plaintiff "is deemed to have abandoned . . . the IHO's findings regarding . . , transportation." (A-0026-27).

Accordingly, the Court grants summary judgment to Defendant with respect to Plaintiff's second claim for relief.

## **CONCLUSION**

The SRO appropriately found that the District offered I.J.B. a FAPE, and accordingly, Plaintiff's motion for summary judgment is DENIED and summary judgment is GRANTED to Defendant.

The Clerk of Court is respectfully directed to terminate the motions pending at Doc. 22 and Doc. 24.

**SO ORDERED.**

Dated: White Plains, New York
       April 15, 2024

_____
Philip M. Halpern
United States District Judge